## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FLORIDA POWER & LIGHT COMPANY AND JEA,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action File No.: _____** |
| **GEORGIA POWER COMPANY, MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA, OGLETHORPE POWER COMPANY, AND CITY OF DALTON, GEORGIA,** | **JURY DEMAND** |
| **Defendants.** | |

## COMPLAINT

Plaintiffs, Florida Power & Light Company ("FPL") and JEA f/k/a Jacksonville Electric Authority, by and through undersigned counsel, hereby file this Complaint against Defendants, Georgia Power Company ("GPC"), Municipal Electric Authority of Georgia ("MEAG"), Oglethorpe Power Corporation ("OPC"), and the City of Dalton, Georgia ("Dalton"), and state as follows:

### Nature of the Action

1.    The Robert W. Scherer Power Plant ("Plant Scherer") is one of the largest coal-fired thermoelectric power-production facilities in the United States. It has four generating units, each capable of producing over 800 megawatts. GPC,

along with MEAG, OPC, and Dalton, own Unit Nos. 1 and 2. GPC and FPL own Unit No. 3, and FPL and JEA own Unit No. 4. Plaintiffs have never had an ownership interest in Unit Nos. 1 and 2. Plaintiffs seek declaratory relief from inequitable payment demands made by the Defendants for future environmental costs relating to the Defendants' sole continued and future operation of the units that they exclusively own, Unit Nos. 1 and 2.

2.      Plaintiffs retired or announced the retirement of their interests in Plant Scherer. FPL and JEA retired Unit No. 4 on December 31, 2021. GPC and FPL announced that they will retire Unit No. 3 by the end of 2028.

3.      The controversy here is that GPC, MEAG, OPC and Dalton (hereinafter the "Co-owners") demand that FPL and JEA pay for the Co-owners' environmental costs for their continued operation of Unit Nos. 1 and 2, namely the storage, treatment and handling of bottom ash, fly ash, powder activated carbon ("PAC") ash, flue gas desulphurization wastewater, and other by-products that are necessitated as a result of the decision to continue to operate Unit Nos. 1 and 2, *after* the retirement of Unit Nos. 3 and 4.

4.      More specifically, the Co-owners demand that FPL and JEA pay for the construction of new landfills and cells to store the by-products of coal combustion and the air quality control systems ("AQCS") associated with the continued operation of Unit Nos. 1 and 2 (hereinafter the "New Landfills and Cells"). The New

Landfills and Cells will not be built for many years after the 2028 closure of Unit No. 3 and the 2021 closure of Unit No. 4. The Co-owners also demand that FPL and JEA pay for, without limitation, the design, construction, operation, and maintenance of a new wastewater treatment facility that is only necessitated by the decision to continue to operate Unit Nos. 1 and 2 (hereinafter the "Wastewater Facility"), in which neither FPL nor JEA have any interest.

5.      Defendants demand that FPL and JEA unfairly subsidize their decision to continue operating Unit Nos. 1 and 2 at Plant Scherer. Defendants make this demand despite GPC's own acknowledgement that it is no longer economical to operate Plant Scherer given the increasing cost pressures from existing and future environmental requirements and the current availability of more economic and more environmentally friendly replacement capacity. Indeed, GPC has decided to retire Unit No. 3 in 2028.

6.      Because of the Co-owners' decision to continue operating those units, FPL and JEA respectfully ask the Court for declaratory judgment as to their rights and obligations to make payments for costs incurred by Unit Nos. 1 and 2 because of the decision to continue operating those units, specifically:

        a.      for New Landfills and Cells that will only service the operations of Unit Nos. 1 and 2 after retirement of Unit Nos. 3 and 4;

b.      for a new Wastewater Facility that is only necessary because the Defendants have decided to continue operation of Unit Nos. 1 and 2 after the effective date of new federal rules concerning Clean Water Act ("CWA") effluent limitation guidelines ("ELG"), and specifically the 2020 Steam Electric Reconsideration Rule (the "ELG Rule"), and after retirement of Unit Nos. 3 and 4; and

7.      Upon entry of declaratory judgment, Plaintiffs further request the Court to exercise its authority to enter supplemental relief in the form of monetary damages for all payments made by FPL and JEA under protest beginning in 2022 with respect to the Wastewater Facility, after the retirement of Unit No. 4.

## The Parties

8.      FPL is a corporation organized under the laws of the State of Florida, with its principal place of business located in Palm Beach County, Florida.

9.      JEA is a foreign body politic and corporate and an independent agency of the City of Jacksonville, Florida, created and established pursuant to Chapter 21 of the Charter of the City of Jacksonville. JEA's principal place of business is in Duval County, Florida.

10.     GPC is a corporation organized under the laws of the State of Georgia, with its principal place of business in Fulton County, Georgia.

11.     MEAG is a public corporation and an instrumentality of the State of Georgia, with its principal place of business in Fulton County, Georgia.

12.     OPC is a corporation organized under the laws of the State of Georgia, with its principal place of business in Dekalb County, Georgia.

13.     Dalton is a municipal corporation organized under the laws of the State of Georgia and has its principal place of business in Whitfield County, Georgia.

## Jurisdiction and Venue

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The parties are citizens of different states, and the amount in controversy exceeds the jurisdictional minimum of $75,000.

15.     This Court also has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Upon a successful claim for declaratory judgment, further supplemental relief may be awarded by this Court pursuant to 28 U.S.C. § 2202.

16.     This Court has personal jurisdiction over GPC, MEAG, OPC, and Dalton because they are all citizens of Georgia.

17.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because all of the defendants reside within Georgia, maintain their respective principal places of business within the counties served by this Court, and because a substantial part of the events or omissions giving rise to the claim occurred within Georgia.

## Factual Background

### A.    Plant Scherer Ownership

18.    GPC, OPC, MEAG and Dalton are the current co-owners of Unit Nos. 1 and 2. GPC and FPL are the current co-owners of Unit No. 3, and FPL and JEA are co-owners of the now-retired Unit No. 4. The ownership percentages and retirement dates for each unit are set forth below in *Figure No. 1:*

| UNIT | OWNERSHIP % | | | | | | RETIREMENT |
|------|-----|-----|-----|------|-----|--------|------------|
|      | OPC | GPC | FPL | MEAG | JEA | DALTON |            |
| 1    | 60  | 8.4 | -   | 30.2 | -   | 1.4    | Unknown    |
| 2    | 60  | 8.4 | -   | 30.2 | -   | 1.4    | Unknown    |
| 3    | -   | 75  | 25  | -    | -   |        | 2028       |
| 4    | -   | -   | 76.4| -    | 23.6|        | 2021       |

*Figure No. 1*

### B.    Agreements Governing Plant Scherer Between Plaintiffs and Defendants (collectively, the "Scherer Owners")

19.    The agreement between the Scherer Owners that governs the management of Plant Scherer is the Plant Scherer Managing Board Agreement dated December 31, 1990, which was later amended on October 24, 2013 and again on October 4, 2018 (hereinafter the "Managing Agreement"). A true and correct copy of the Managing Agreement is attached hereto as **Exhibit 1**.

20.    GPC, FPL and JEA maintain several agreements solely with respect to the management of Unit No. 4, including, but not limited to: Plant Robert W. Scherer Unit Number Four Operating Agreement, dated December 31, 1990 (hereinafter the

"Unit No. 4 Operating Agreement"); Plant Robert W. Scherer Unit Number Four Amended and Restated Purchase and Ownership Participation Agreement, dated December 31, 1990 (hereinafter the "Unit No. 4 Ownership Agreement"); and Plant Scherer Unit No. 4 Accounting and Billing Policies and Procedures, dated January 24, 1991 (hereinafter the "Accounting Agreement"). A true and correct copy of each of these agreements is attached hereto as **Exhibits 2-4**, respectively.

21.     GPC and FPL separately maintain several agreements solely with respect to the management of Unit No. 3, including, but not limited to, the Plant Robert W. Scherer Unit Number Three Amended and Restated Operating Agreement, dated December 31, 1990 (hereinafter the "Unit No. 3 Operating Agreement"). A true and correct copy of the Unit No. 3 Operating Agreement is attached hereto as **Exhibit 5.**

22.     The Scherer Owners have a duty to deal with each other in a fair and equitable manner and in good faith, including as to the allocation of the costs of, among other things, operating and maintaining Plant Scherer. *See, e.g.,* Ex. 1, Art. 5-6, 8-9, Ex. A; Ex. 2, Art. 2, 5, 6; Ex. 3, Art. 5; Ex. 5, Art. 2-5.

23.     The Managing Agreement names GPC as the agent for all the other Scherer Owners. *See, e.g.,* Ex. 1, §§ 1.5 and 1.9. GPC operates and maintains Plant Scherer on behalf of the other Scherer Owners, including, but not limited to, managing funding from the Scherer Owners and implementing various owner

approved budgets to operate Plant Scherer. *See* Ex. 1, §§ 1.4-1.5. GPC must execute its role as the agent for Plant Scherer under the Managing Agreement and other agreements in a fair and equitable manner, in good faith, and in accordance with Prudent Utility Practice, as defined in the Managing Agreement, Unit No. 4 Operating Agreement, Unit No. 4 Ownership Agreement, Accounting Agreement and Unit No. 3 Operating Agreement. *See, e.g.,* Ex. 1, § 1.30; Ex. 1, Art. 5-6, 8-9, Ex. A; Ex. 2, Art. 2, 5, 6; Ex. 3, Art. 5; Ex. 5, Art. 2-5.

24.    The agreements provide that operating costs shall be allocated among and between Units, Unit Common Facilities, Additional Units, Additional Unit Common Facilities, and Plant Scherer Common Facilities, as those terms are defined in the Managing Agreement. Ex. 1 at Ex. C. The agreements, however, are all silent as to what occurs in the situation here where two units are retiring ahead of the others and the remaining units will have to spend money for environmental costs specific to their exclusive ongoing operations.

**C.    Plant Scherer is No Longer Cost Effective**

25.    Defendant GPC has recognized that Unit Nos. 1 and 2 are economically "challenged," and GPC has committed to retiring Unit No. 3 by 2028. As recently as March 11, 2022, in testimony provided to the Georgia Public Service Commission, Docket No. 44160, GPC stated:

a.    "It is no longer economic to operate the Company's coal units long-term, given the increasing cost pressures from existing and future environmental requirements and the current availability of more economic replacement capacity."

b.    "The Company's coal resources now lack sufficient economic and flexibility attributes to remain competitive within an electric system with large renewable penetration and in a future with continued environmental cost pressures, including carbon. [. . .] The Company's transition plan considers the [Environmental Protection Agency's ("EPA")] Effluent Limitations Guidelines . . . Reconsideration Rule cessation of coal combustion option, _which allows the Company to comply with the rule by permanently ceasing coal combustion at a unit_ no later than December 31, 2028. This compliance option provides the Company with additional time to prepare the System for retirements by initiating transmission projects that are necessary to accommodate the combined retirements and the procurement of replacement capacity, _while reducing or avoiding additional environmental-related investments for certain resources_." (Emphasis added.)

c.    "Coal units lack the necessary flexibility characteristics to efficiently respond to large changes in the generating output of renewable resources."

d.      GPC's "coal units are unable to start and stop daily, thereby creating economic inefficiencies in a future state with substantial intermittent resources."

e.      _GPC even admits that retirement of Unit No. 3 is in the best interest of customers_. "[E]conomic evaluations, combined with other operational considerations, led to the conclusion that retirement of Plant Scherer Unit 3 is in the _best interests of customers_." (Emphasis added.)

26.      GPC's integrated resource plan ("IRP") filings with the Georgia Public Service Commission state that Plant Scherer is in financial trouble:

a.      "The economic analysis for the Company's coal resources does not support long-term continued operation."

b.      "Economic conditions continue to deteriorate for Plant Scherer. [. . .] The Company's 2022 IRP retirement studies reflect long-term economic risk associated with operation of Plant Scherer Units 1-3."

27.      "The analysis for each unit shows that long-term continued operations is no longer in the best interest of customers."

**D.      EPA Provides Coal Plants with Pathways for Environmental Compliance**

28.      Against the backdrop of financial deterioration, Plant Scherer became subject to new and/or changed environmental regulations pursuant to the ELG Rule.

10

The CWA prohibits the discharge of pollutants from point sources to waters of the United States except as authorized by permit. 33 U.S.C. § 1311(a).

29.     GPC must comply with the ELG Rule because it discharges into surface waters.

30.     The ELG Rule addresses effluent limitations and standards for multiple waste streams generated by new and existing steam electric facilities, including flue gas desulphurization wastewater, as well as fly ash transport waters, bottom ash transport waters, coal combustion residual leachate from landfills and surface impoundments, and wastewater from flue gas mercury control systems.

**E.     Cost Allocation for New Environmental Compliance Facilities**

31.     While the Managing Board Agreement does not specifically address how the Scherer Owners should allocate costs for new facilities stemming from new environmental laws and regulations where other owners have chosen retirement as their compliance options in lieu of building those new facilities, the Scherer Owners must nevertheless act in accordance with Prudent Utility Practice and fairly allocate costs.

32.     Costs to operate and maintain Plant Scherer are allocated to: (i) a specific unit, (ii) jointly to two of the four units, (iii) as a function of actual generation output for a specific unit, or (iv) based on the nameplate generation capacity of a unit. However, many of the environmental compliance systems at Plant

Scherer are assigned to specific units. Among other things, each unit has its own dedicated selective catalytic reduction, wet flue gas desulphurization, and pulse jet fabric filter systems, for which the costs are allocated 100% to each unit.

33.     The Accounting Agreement specifically provides that "[i]f no accounting policy or allocation method or procedure has been specified herein for a particular cost or cost component, GPC, as Agent, or the Scherer Unit No. 4 Participants shall propose a *fair and equitable* policy or allocation method to be used and submitted for approval by Scherer Unit No. 4 Participants and GPC, as Agent." Ex. 4, § I.A.3. Thus, the silence of the agreements requires that there should be a fair and equitable determination of how to handle allocation of costs for the New Landfills and Cells, as well as the Wastewater Facility, while simultaneously recognizing the retirement of Unit Nos. 3 and 4. GPC and the Co-owners also have the general obligation to allocate cost responsibilities in a fair, equitable, and consistent manner. *See, e.g.,* Ex. 1, § 7.1; Ex. 2, § 1(ba); Ex. 4, § I.A.2, § I.A.5, § I.B.6.

### (i)     *FPL elects to comply with ELG by retiring Unit No. 4.*

34.     As the regulations concerning ELG have changed over the years, FPL and the Scherer Owners readjusted Plant Scherer's budgets in response. Throughout those changes, FPL complied with its ELG-related obligations.

35.     Some 30 years after the Plant Scherer Owners originally joined together to operate Plant Scherer, FPL and JEA, as well as GPC (as to Unit No. 3) are all retiring their ownership interests in their Plant Scherer coal-fired units.

36.     Consistent with their responsibility to deal with the other parties in a fair and equitable manner, as well as consistent with Prudent Utility Practice, FPL engaged in a series of discussions with the other Scherer Owners regarding its retirement of Unit No. 4 and the impact of the changing ELG regulations, as well as the ELG Rule on its obligations, post Unit No. 4 retirement.

37.     As of April 2, 2019, the Plant Scherer 2019-2023 Common Capital Budget allocated money to address the ELG Rule. But by October 2019, the Scherer Managing Board recognized that proposed ELG Rule changes were impending, leading GPC to propose a revised budget. FPL advised it would propose an alternative budget within 30 days for the Managing Board's review.

38.     On September 9, 2020, FPL formally gave GPC notice that it intended to retire its ownership interest in Unit No. 4 as of December 31, 2021. This retirement was an authorized pathway for compliance with the ELG Rule.

39.     On September 17, 2020, the Scherer Owners met for a Plant Scherer 2021 Common Facilities budget review meeting, in preparation for September 23, 2020 Managing Board meeting and budget approval vote. In anticipation of Unit No. 4's retirement, at this meeting, FPL attempted to discuss post Unit No. 4

retirement obligations. FPL and JEA explained their intent to achieve ELG compliance through retiring their coal-fired units. FPL further explained that, as a result of the retirement, it would not be responsible for future ELG-related capital and operating and maintenance costs, such as the New Landfills and Cells, as well as the Wastewater Facility.

40.   GPC, as agent for the co-owners, deferred discussion on the matter.

41.   At the Scherer Board Meeting on September 23, 2020, FPL and JEA explained that because they intended to utilize the retirement of Unit No. 4 as their compliance option for the ELG requirements — as specifically permitted under the ELG Rule — they should not be obligated for investment costs related to the New Landfills and Cells, as well as the Wastewater Facility, that would be incurred *years after* the retirement of Unit No. 4.

42.   On September 23, 2020, FPL and JEA voted against the proposed budget that attributed the Wastewater Facility and New Landfills and Cells costs to retiring units. FPL's predecessor in interest as to Unit No. 3, Gulf Power Company, announced that it, too, would seek to retire Unit No. 3 as its compliance option with the ELG Rule.

43.   Despite the undisputed failing economics of Plant Scherer, MEAG, OPC, and Dalton took the position that even if a unit retires, that unit's owners would

still be responsible for Wastewater Facility and New Landfills and Cells costs necessitated by the decision to continue operating the remaining units.

44.    Seeking an equitable solution, FPL submitted a revised alternate 2021 budget, reiterating that ELG compliance through retirement of Unit No. 4 was the only rational choice. FPL would not agree to bear the costs for investments incurred by the Co-owners' decision to continue operating Unit Nos. 1 and 2 and related to ELG compliance that would not be installed until after Unit No. 4's retirement.

45.    Between October 2020 and April 2021, FPL made a series of requests to GPC, given GPC's role as the agent for Plant Scherer, asking GPC to provide specific data and information regarding GPC's position on Unit No. 4's post-retirement obligations and to meet with FPL.

46.    FPL requested monthly meetings with GPC to discuss Unit No. 4's post-retirement obligations, and on April 1, 2021, FPL requested GPC provide a 10-year ELG cost forecast. GPC intermittently responded to these requests but provided incomplete information.

47.    Ultimately, the construction commencement date for the Wastewater Facility needed solely because of the decision to continue to operate Unit Nos. 1 and 2 was estimated at December 31, 2025 – *four years after the retirement of Unit No. 4*.

### (ii)    2022 Budget Approval for Plant Scherer

48.    On or about August 2, 2021, FPL, acting as owner and as agent for JEA, requested an agenda item for the upcoming September 30, 2021 Managing Board meeting. The agenda item was a motion seeking to change Unit No. 4's nameplate rating from 818 megawatts to zero megawatts upon its retirement on December 31, 2021. The agenda item recognized that upon retirement, FPL and JEA should have no obligations for future costs related to the New Landfills and Cells, as well as the Wastewater Facility, because Unit No. 4 will not be producing any by-products or waste streams covered by the ELG Rule.

49.    Later, on or about August 16, 2021, in accordance with the Unit No. 4 Operating Agreement, GPC provided FPL with a copy of the proposed Unit No. 4 business plan for 2022-2026. While the proposed plan acknowledged that FPL and JEA would retire Unit No. 4 by December 31, 2021, the plan did not fairly or equitably allocate costs for the New Landfills and Cells solely receiving materials from Unit Nos. 1 and 2, nor did it fairly and equitably allocate costs for the Wastewater Facility necessitated solely because of the Co-owners' decision to continue to operate Unit Nos. 1 and 2 after 2028.

50.    GPC's proposed Unit No. 4 business plan for 2022-2026 did not fairly allocate cost with reasonable judgment in light of the facts known at the time the decision was made.

16

51.     The proposed budget asks the owners of Unit Nos. 3 and 4 to subsidize the continued costs resulting from the decision to maintain operation of Unit Nos. 1 and 2 by the Co-owners. Accepting the proposed budget asks FPL and JEA, the owners of Unit Nos. 3 and 4, to pay for, treat, and store pollutants generated because the Co-owners decided to continue the operation of Unit Nos. 1 and 2.

52.     By September 7, 2021, the Co-owners agreed that once Unit No. 4 was retired, that unit would no longer be responsible for common facility costs that are allocated based on the unit's output. However, GPC still continued to delay in providing detailed budgeting information on Unit No. 4's post-retirement obligations.

53.     On or about September 20, 2021, FPL submitted an amended motion, reminding GPC of its obligations under the Accounting Agreement. FPL also requested GPC to forward its motion to the other Co-owners.

54.     JEA and FPL formally presented their motion to the Co-owners on or about September 30, 2021.

55.     In response, MEAG, Dalton, and OPC, along with GPC, voted against the motion claiming that: (i) the Managing Agreement does not allow them to entertain a motion to reduce cost allocations due to unit retirements; and (ii) the contracts between the parties do not contemplate any changes to allocation of what they call common facilities costs upon the retirement of a unit even though GPC has

adjusted certain cost allocations from GPC to Plant Scherer as a result of other unit retirements within their generation fleet outside of its ownership at Plant Scherer.

56.    FPL and JEA took several other actions at the September 30, 2021 meeting between the Scherer Owners:

a.    FPL and JEA stated that the retirement of Unit No. 4 will serve as their compliance option for the ELG Rule and therefore have no liability for the new Wastewater Facility because of the decision to continue operating Unit Nos. 1 and 2 after 2028; and

b.    FPL and JEA were not responsible for costs related to the New Landfills and Cells that would house by-products generated *solely* from Unit Nos. 1 and 2.

57.    At the September 30, 2021 meeting, FPL and JEA voted down the following budgets:

a.    2022 proposed common facility operation and maintenance budget along with the common facility capital budget;

b.    2022 proposed Unit Nos. 3 and 4 common operation and maintenance budget;

c.    environmental capital budget; and

d.    2022 proposed Unit Nos. 3 and 4 common capital budget.

58.     FPL and JEA proposed to submit revised versions of the budgets they voted down on or before October 30, 2021.

59.     At the September 30, 2021 meeting, FPL reiterated that FPL and JEA did not believe it was appropriate, equitable or acting in good faith to charge them equally for costs that should be borne by OPC, MEAG, GPC, and Dalton, and that all costs billed to FPL and JEA should be fair and equitable.

60.     FPL and JEA recognized that there are some costs which are appropriate for them to share; however, there are other costs, such as for the New Landfills and Cells, as well as for the Wastewater Facility, which FPL and JEA are not obligated to pay because Unit Nos. 3 and 4 will be retired long before the Wastewater Facility becomes necessary as a result of the decision to continue operation of Unit Nos. 1 and 2 and before Unit Nos. 1 and 2 begin using the New Landfills and Cells.

61.     On or about October 15, 2021, GPC, on behalf of the Co-owners, sent a revised 2022-2026 Unit No. 4 business plan to FPL, but the Co-owners maintained their position that FPL and JEA would be responsible for their portion of the costs for the New Landfills and Cells, as well as the Wastewater Facility for Unit Nos. 1 and 2. The Co-owners took these positions even though they are inconsistent with its obligations to act "reliably and cost-effectively" in accordance with Prudent Utility Practice, as well as in a fair, equitable, and consistent manner. *See, e.g.,* Ex.

1, § 1.30; Ex. 1, Art. 5-6, 8-9, Ex. A; Ex. 2, Art. 2, 5, 6; Ex. 3, Art. 5; Ex. 5, Art. 2-5. *See also* Ex. 1, § 7.1; Ex. 2, § 1(ba); Ex. 4, § I.A.2, § I.A.5, § I.B.6.

62.     FPL responded to GPC's submission of a revised 2022-2026 business plan on or about October 26, 2021 by, among other things, continuing to object to any payment for the New Landfills and Cells, as well as the Wastewater Facility necessitated solely because of the decision to continue operating Unit Nos. 1 and 2.

63.     On October 26, 2021, FPL and JEA submitted an alternate Common Facilities operations and maintenance budget along with an alternate Common Facilities capital budget in response to the budgets proposed by GPC at the September 30, 2021 Board meeting.

64.     On November 23, 2021, GPC notified FPL that its alternate proposed budget was rejected. As a result, the Co-owners imposed the previously contested budgets — thereby allocating to FPL and JEA costs for the New Landfills and Cells, as well as the Wastewater Facility, *solely necessitated as a result of the decision to continue to operate Unit Nos. 1 and 2*.

65.     On or about January 12, 2022, and again on February 7, 2022, FPL made its portion of payments to GPC, as the Plant Scherer agent, pursuant to the 2022 budgets previously objected to by FPL and JEA. FPL made such payments under protest and reserved its rights under the terms of the agreements and applicable law.

**F.    Summary of Current Dispute**

*(i)    Plaintiffs should not be required to pay for the future costs of New Landfills and Cells*

66.    The Co-owners are currently planning to construct two separate facilities, known as Cell 2 and Cell 3, as well as a future unnamed landfill, which are all designed to accept coal combustion and AQCS by-products exclusively from *Unit Nos. 1 and 2*.

67.    Construction of Cell 2 will occur from 2030-2033 and construction of Cell 3 will occur from 2025-2026. The Co-owners will also construct another unnamed landfill beginning in 2031 with a target completion date of 2034.

68.    A plan view showing the location of Cells 2 and 3, in relation to the existing landfills at Plant Scherer (Cell 1 and the PAC ash cell), is shown below in *Figure No. 2.*



*Figure No. 2*

69.     FPL and JEA object to any allocation of cost to them from the New Landfills and Cells that will solely receive coal combustion by-products that are solely generated by Unit Nos. 1 and 2.

### (ii) Plaintiffs should not be required to pay for the future costs of a new Wastewater Facility

70.     FPL and JEA further object to any allocation of cost to them for the construction of the Wastewater Facility to satisfy the obligations of MEAG, OPC, GPC, and Dalton with respect to the federal ELG Rule. FPL and JEA have satisfied or will satisfy their corresponding ELG obligations through the retirement of Unit

No. 4. FPL and GPC will similarly satisfy their same obligations with respect to Unit No. 3 through retirement of Unit No. 3.

## COUNT I — DECLARATORY JUDGMENT

71.     FPL and JEA re-allege and incorporate by reference paragraphs 1 through 70 as if fully set forth herein.

72.     FPL and JEA are entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that they are not responsible for costs in any way related to the design, construction, operation, maintenance, or closure of:

    a.     the New Landfills and Cells, that is, future landfills and cells to store by-products of the coal combustion process and corresponding AQCS for Unit Nos. 1 and 2; and

    b.     the Wastewater Facility, that is, any wastewater treatment systems to comply with the federal ELG Rule.

73.     FPL and JEA are interested parties because they have been and will continue to be forced to subsidize the continued operation of Unit Nos. 1 and 2 through payment of these costs notwithstanding the fact that they do not, nor have they ever had any ownership interest in those units.

74.     An actual, ongoing controversy between FPL, JEA and the Co-owners exists, as the Co-owners are requiring FPL and JEA to pay for portions of the New Landfills and Cells, as well as the Wastewater Facility, in contravention of, among

other things, the Managing Agreement. GPC's actions in this regard are also in contravention of the Accounting Agreement, Unit No. 4 Operating Agreement, Unit No. 4 Ownership Agreement, and Unit No. 3 Operating Agreement.

75.    The silence of the governing contracts on these specific issues require that there should be a fair and equitable determination of how to handle allocation of cost for the New Landfills and Cells, as well as the Wastewater Facility, while simultaneously recognizing the retirement of Unit Nos. 3 and 4's with respect to future common facilities costs.

76.    It is unreasonable and inequitable to require FPL and JEA to fund the New Landfills and Cells, as well as the Wastewater Facility, after retirement of all their interest in Plant Scherer. Moreover, FPL and JEA should not have to pay for federal ELG Rule compliance caused by the decision to continue the operation of uneconomic units that they do not own or operate when the only rational way to comply is to retire the entirety of Plant Scherer, just as GPC announced it will do for Unit No. 3.

77.    Therefore, a declaratory judgment is necessary to relieve FPL and JEA of the risk of taking future action that, without direction, will continue to jeopardize their respective interests.

78.    All conditions precedent to the filing and maintenance of this action have been satisfied, excused, or waived.

## DEMAND FOR A JURY

Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.    A final declaration and decree that FPL and JEA are not responsible for any costs for the New Landfills and Cells, as well as the Wastewater Facility;

2.    That the Court retain jurisdiction and exercise its authority to award supplemental relief; and

3.    Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

DATED: May 5, 2022                    **AKERMAN LLP**

*s/ Montoya M. Ho-Sang*
Montoya M. Ho-Sang
Georgia Bar No. 572105
Octavia M. Green
(*Pro Hac Application To Be Filed*)
999 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30309
Telephone: (404) 733-9800
Facsimile: (404) 733-9898
Email: montoya.ho-sang@akerman.com
Email: octavia.green@akerman.com

Michael C. Marsh
(*Pro Hac Application To Be Filed*)
Sowmya Bharathi
(*Pro Hac Application To Be Filed*)
201 E. Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 462-2224
Email: michael.marsh@akerman.com
Email: sowmya.bharathi@akerman.com

John M. Neary
(*Pro Hac Application To Be Filed*)
750 Ninth Street, N.W., Suite 750
Washington, DC 20001
Telephone: (202) 393-6222
Facsimile: (202) 393-5959
Email: john.neary@akerman.com

*Counsel for Plaintiffs Florida Power & Light
Company and JEA*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1B. This pleading has been prepared in Times New Roman font, 14 point.

**AKERMAN LLP**

*<u>s/ Montoya M. Ho-Sang</u>*