## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| FLORIDA POWER & LIGHT COMPANY AND JEA,<br><br>       Plaintiffs,<br><br>v.<br><br>GEORGIA POWER COMPANY, MUNICIPAL ELECTRIC AUTHORITY OF GEORGIA, OGLETHORPE POWER CORPORATION, AND CITY OF DALTON, GEORGIA,<br><br>       Defendants. | Civil Action File No.:<br>1:22-cv-01798-MLB |

## FIRST AMENDED COMPLAINT

Plaintiffs Florida Power & Light Company ("FPL") and JEA f/k/a Jacksonville Electric Authority, by and through undersigned counsel, hereby file this First Amended Complaint against Defendants Georgia Power Company ("GPC"), Municipal Electric Authority of Georgia ("MEAG"), Oglethorpe Power Corporation ("OPC"), and the City of Dalton, Georgia ("Dalton"), and state as follows:

## Nature of the Action

1.    The Robert W. Scherer Power Plant ("Plant Scherer") is one of the largest coal-fired thermoelectric power-production facilities in the United States. Prior to commencement of this action, it had four generating units, each capable of

producing over 800 megawatts. As set forth below, Unit No. 4 (jointly owned by FPL and JEA) has been retired and Unit No. 3 will be taken out of service on or before the end of 2028.

2.     All four Defendants — GPC, MEAG, OPC, and Dalton (hereinafter the "Co-owner Defendants") — jointly own Unit Nos. 1 and 2. Neither Plaintiff has any ownership interest in Unit Nos. 1 and 2.

3.     GPC and FPL own Unit No. 3, and FPL and JEA own the now retired Unit No. 4.

4.     At all times relevant to this action, GPC has operated and maintained Unit No. 3 as an agent for FPL. At all times relevant to this action, GPC has served as the agent for FPL and JEA with respect to Unit No. 4.

5.     In its role as agent, GPC owes FPL and JEA a fiduciary duty to act primarily for the benefit of FPL and JEA in matters connected with such agency. The relationship of Plaintiffs as principals and GPC as their agent, being confidential and fiduciary in character, demands of GPC the utmost loyalty and good faith to the Plaintiffs, and without adverse distinction between, among other things, the Plaintiffs and GPC's interests in Unit Nos. 1 and 2.

6.     In June 2020, Plaintiffs announced the retirement of Unit No. 4 and ultimately retired Unit No. 4 on or about December 31, 2021. FPL and JEA physically separated Unit No. 4 from the transmission system, removed oil from all

equipment associated with Unit No. 4, and removed the catalyst from the selective catalytic reduction system for Unit No. 4. Furthermore, FPL and JEA are not preserving the turbine for Unit No. 4, rendering it inoperable.

7.      In the fall of 2021, GPC (a Co-Owner Defendant) and FPL announced that they will retire Unit No. 3 by the end of 2028.

8.      Pursuant to the governing standard of care, and as part of its decision to retire Unit No. 3, GPC acknowledged that it is no longer economical to operate Plant Scherer given the increasing cost pressures from existing and future environmental requirements and the current availability of more economic and environmentally-friendly replacement capacity. Notwithstanding, the Co-owner Defendants, decided to continue operating Unit Nos. 1 and 2.

9.      By electing to continue operating Unit Nos. 1 and 2, the Co-owner Defendants decided to comply with regulatory changes by electing to construct: (i) new landfills and cells to store the by-products of coal combustion and the air quality control systems ("AQCS") (herein the "New Cells"); and (ii) a new wastewater treatment facility (hereinafter the "Wastewater Facility").

10.     The New Cells will store and handle bottom ash, fly ash, powder activated carbon ash, flue gas desulphurization wastewater, and other by-products that are necessitated solely as a result of the continued operation of Unit Nos. 1

and 2, *after* the retirement of Unit Nos. 3 and 4. The New Cells will not be built and operational for many years after the closures of Unit Nos. 3 and 4.

11. Only Unit Nos. 1 and 2 will *use* the New Cells and Wastewater Facility.

12. Unit Nos. 3 and 4 have elected to retire, which is an authorized pathway to comply with regulatory changes. Neither FPL nor JEA will reverse its decision to retire Unit Nos. 3 or 4. Therefore, Unit Nos. 3 and 4 will never use such new facilities.

13. Nevertheless, the Co-owner Defendants have unjustly imposed upon Plaintiffs the obligation to pay for the costs to design, construct, operate, and maintain the New Cells and Wastewater Facility for the waste and waste streams generated by their Unit Nos. 1 and 2.

14. To allocate these costs to Plaintiffs, Defendants misapplied the governing agreements' definitions of "Plant Scherer Common Facilities" and "Common Facility Cost Construction." In doing so, the Defendants breached, and continue to breach, the parties' agreements, including, but not limited to, the Managing Board Agreement that governs all parties to this dispute. GPC has also breached its fiduciary duties to Plaintiffs by, among other things, the decisions GPC made on behalf of Plaintiffs concerning the Clean Water Act effluent limitation guidelines ("ELG"), and specifically the 2020 Steam Electric Reconsideration Rule, as further modified through Supplemental Effluent Limitations Guidelines and

Standards for the Steam Electric Power Generating Point Source Category that EPA published on or about March 8, 2023 (hereinafter the "ELG Rule").

15.    GPC, as agent, and the other Defendants in their roles as members of the Plant Scherer Managing Board, failed to follow the "Guidelines for Capital Budgets and Operating Budgets," which require the Plant Scherer Managing Board to utilize Prudent Utility Practice and allocate costs fairly and equitably — standards of care to which GPC and the Plant Scherer Managing Board are contractual obligated to adhere as such requirements are present in the governing agreements and incorporated by reference into the Managing Board Agreement signed by all Defendants to this action.

16.    Consequently, Plaintiffs have already paid nearly $1,800,000.00 under protest as is required by the governing agreements and, if the breach remains unaddressed, will be required to pay more than $70,000,000 through 2028. Plaintiffs seek to recover all damages resulting from Defendants' wrongful conduct.

17.    Plaintiffs also seek declaratory relief pertaining to inequitable payment demands made by the Co-owner Defendants for costs in any way related to the design, construction, operation, or maintenance of the New Cells to store by-products for Unit Nos. 1 and 2, and the Wastewater Facility for Unit Nos. 1 and 2 to comply with the ELG Rule.

**The Parties**

18.     FPL is a corporation organized under the laws of the State of Florida, with its principal place of business located in Palm Beach County, Florida.

19.     JEA is a foreign body politic and corporate and an independent agency of the City of Jacksonville, Florida, created pursuant to Chapter 21 of the Charter of the City of Jacksonville. Its principal place of business is in Duval County, Florida.

20.     GPC is a corporation organized under the laws of the State of Georgia, with its principal place of business in Fulton County, Georgia. GPC is a member of the Plant Scherer Managing Board, signatory to the Managing Agreement (defined below), and is bound by the Managing Agreement and other governing agreements incorporated therein. GPC is also a signatory to all of the other agreements included as exhibits to this amended complaint.

21.     MEAG is a public corporation with its principal place of business in Fulton County, Georgia. MEAG is a member of the Plant Scherer Managing Board, signatory to the Managing Agreement, and is bound by the Managing Agreement and other governing agreements incorporated therein.

22.     OPC is a corporation organized under the laws of the State of Georgia, with its principal place of business in Dekalb County, Georgia. OPC is a member of the Plant Scherer Managing Board, signatory to the Managing Agreement, and is

6

bound by the Managing Agreement and other governing agreements incorporated therein.

23.     Dalton is a municipal corporation organized under the laws of the State of Georgia and has its principal place of business in Whitfield County, Georgia. Dalton is a member of the Plant Scherer Managing Board, signatory to the Managing Agreement, and is bound by the other governing agreements incorporated therein.

## Jurisdiction and Venue

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The parties are citizens of different states, and the amount in controversy exceeds the jurisdictional minimum of $75,000.

25.     This Court also has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

26.     With respect to Dalton, sovereign immunity is waived where the claim sounds in breach of contract. Dalton has waived sovereign immunity by entering into the Managing Board Agreement with the Plaintiffs, which is a valid, written agreement, and subsequently breaching the Managing Board Agreement and the other contracts it incorporates by reference. Georgia municipalities do not have a sovereign immunity defense to contract claims. *C.f.* Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c) ("defense of sovereign immunity is hereby waived as to any action *ex*

*contractu* for the breach of any written contract now existing or hereafter entered into . . .”); OCGA § 50–21–1 (same).

27.     This Court has personal jurisdiction over GPC, MEAG, OPC, and Dalton because they are all citizens of Georgia.

28.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) because all of the defendants reside within Georgia, maintain their respective principal places of business within the counties served by this Court, and because a substantial part of the events or omissions giving rise to the claim occurred within Georgia.

<u>**Factual Background**</u>

**A.     Plant Scherer Ownership and Agreements Governing Plant Scherer Between Plaintiffs and Defendants (collectively, the "Scherer Owners")**

29.     The ownership percentages and retirement dates for each unit are:

| UNIT | OWNERSHIP % | | | | | | RETIREMENT |
|------|-----|-----|-----|------|-----|--------|------------|
|      | OPC | GPC | FPL | MEAG | JEA | DALTON |            |
| 1    | 60  | 8.4 | -   | 30.2 | -   | 1.4    | Unknown    |
| 2    | 60  | 8.4 | -   | 30.2 | -   | 1.4    | Unknown    |
| 3    | -   | 75  | 25  | -    | -   | -      | On or before 12/31/28 |
| 4    | -   | -   | 76.4| -    | 23.6| -      | Retired 12/31/21 |

30.     The agreements governing Plant Scherer allocate capital and operating costs between and among Unit Nos. 1, 2, 3, 4, the Unit Common Facilities, Additional Unit Common Facilities, and the Plant Scherer Common Facilities.

31.     The Unit Common Facilities are used by Unit Nos. 1 and 2 while the Additional Unit Common Facilities are used by Unit Nos. 3 and 4. The Plant Scherer

Common Facilities are used by one or both of Unit Nos. 1 and 2 and one or both of Unit Nos. 3 and 4.

32. The agreements were written to protect each individual unit owner's rights and to prevent a scenario in which a group of owners could collectively collude to force another owner into a position that violates that owner's rights under the governing agreements. To create that protection for each owner, and as explained below, the actions of the Plant Scherer Managing Board members are subject to the individual owner's rights within its unit-specific Participation Agreements (defined below). By requiring the Plant Scherer Managing Board to operate, subject to the standards within the Participation Agreements, each owner was assured that more than a simple "up-or-down" vote on an issue would bind them to the other owners' will on budgetary issues. Rather, the governing agreements ensured that budgetary votes would be subject to good faith and other standards of care that protect each owner from becoming economic hostages to the others.

33. The relationship of the agreements is explained in subsequent sections; however, the following definitions contained in the Plant Scherer Managing Board Agreement, dated December 31, 1990, as amended on October 24, 2013 and again on October 4, 2018 (hereinafter the "Managing Agreement"), which governs management of Plant Scherer, provide an important framework. (A true and correct

copy of the Managing Agreement is attached hereto as **Exhibit 1**.) The Managing Agreement defines:

a. "Participation Agreements" as "collectively, the Units Participation Agreements, the Unit Three Participation Agreements and the Unit Four Participation Agreements." Ex. 1, § 1.23.

b. "Unit Four Participation Agreements" consist of:

    i. "Plant Robert W. Scherer Unit Number Four Amended and Restated Purchase and Ownership Participation Agreement among GPC, FPL and JEA";

    ii. "Plant Robert W. Scherer Unit Number Four Substation Purchase Agreement among GPC, FPL and JEA"; and

    iii. "Plant Robert W. Scherer Unit Number Four Operating Agreement among GPC, FPL and JEA". Ex. 1, § 1.46.

c. "Unit Three Participation Agreements" consist of:

    i. "Amended and Restated Plant Robert W. Scherer Unit Number Three Purchase and Ownership Participation Agreement among GPC and Gulf"; and

    ii. "Amended and Restated Plant Robert W. Scherer Unit Number Three Operating Agreement among GPC and Gulf". Ex. 1, § 1.47.

### *(i)*     *The Plant Scherer Managing Board Agreement*

34.     Under the Managing Agreement, each of the Scherer Owners is a member of the Plant Scherer Managing Board. Ex. 1, § 2.1. As members of the Plant Scherer Managing Board, the Scherer Owners must perform their duties and obligations in accordance with Prudent Utility Practice, as required by the Managing Agreement. *See, e.g.,* Ex. 1, § 5.1 (specifying Board's use of Prudent Utility Practice standard of care) & App. A.

35.     The Plant Scherer Managing Board has various obligations under the Managing Agreement (*e.g.,* Ex. 1, §§ 2.1-2.2)., which include, but are not limited to:

a.   conducting or undertaking such studies, investigations or audits which the Board determines are appropriate or useful in carrying out its responsibilities or functions (Ex. 1, § 2.3.1);

b.   reviewing, approving, disapproving, and/or revising and approving the budgets for Plant Scherer, all pursuant to Managing Agreement Section 5.1, which requires the Board to conduct such actions in accordance with Prudent Utility Practice (*id.* at § 2.3.2); and

c.   performing the functions described in Articles 4-9 of the Managing Agreement (*id.* at § 2.3.3).

36.     "Prudent Utility Practice" is defined in the Managing Agreement as ". . . any of the practices, methods and acts engaged in or approved by a significant

portion of the electric utility industry prior to such time, or any of the practices, methods and acts which, in the exercise of reasonable judgment in light of the facts known at the time the decision was made, could have been expected to accomplish the desired result at the lowest reasonable cost consistent with good business practices, reliability, safety and expedition." Ex. 1, § 1.30.

### (ii)   *The Operating, Ownership and Accounting Agreements*

37.   GPC, FPL and JEA maintain several agreements predominantly with respect to the management of Unit No. 4, which include, but are not limited to: Plant Robert W. Scherer Unit Number Four Operating Agreement, dated December 31, 1990 (hereinafter the "Unit No. 4 Operating Agreement"); Plant Robert W. Scherer Unit Number Four Amended and Restated Purchase and Ownership Participation Agreement, dated December 31, 1990 (hereinafter the "Unit No. 4 Ownership Agreement"); and Plant Scherer Unit No. 4 Accounting and Billing Policies and Procedures, dated January 24, 1991 (hereinafter the "Accounting Agreement"). True and correct copies of each of these agreements are attached hereto as **Exhibits 2-4**, respectively.

38.   GPC and FPL separately maintain several agreements predominantly with respect to the management of Unit No. 3, which include, but are not limited to: the Plant Robert W. Scherer Unit Number Three Amended and Restated Operating Agreement, dated December 31, 1990 (hereinafter the "Unit No. 3 Operating

Agreement"); and Plant Robert W. Scherer Unit Number Three Amended and Restated Purchase and Ownership Participation Agreement, dated December 31, 1990 (hereinafter the "Unit No. 3 Ownership Agreement"). True and correct copies of each of these agreements are attached hereto as **Exhibits 5-6**, respectively.

### (iii) *The Plant Scherer Managing Board is Bound by the Terms of the Unit Nos. 3 and 4 Participation Agreements*

39.    The Managing Agreement incorporates by reference the terms of the Participation Agreements for Unit Nos. 3 and 4. *See, e.g.,* Ex. 1, §§ 1.2-1.4, 1.7, 1.10-1.12, 1.14, 1.19-1.20, 1.23-1.27, 1.30, 1.37-1.42, 1.46-1.47, 2.2, 3, 5.2, 5.4, 6.1-6.2, 6.7, 7.1, 7.4, 8.2, 8.4, 9.1, 9.2, 10 & 11.

40.    The Participation Agreements include the Unit No. 4 Operating Agreement, the Unit No. 4 Ownership Agreement, the Unit No. 3 Operating Agreement and the Unit No. 3 Ownership Agreement. Ex. 1, §§ 1.23, 1.46. Therefore, the Plant Scherer Managing Board is bound by the terms of the Operating and Ownership Agreements for Unit Nos. 3 and 4. Ex. 1, § 1.23.

41.    The Accounting Agreement is also a Participation Agreement because it is incorporated by reference in the Unit No. 4 Operating Agreement and Unit No. 4 Participation Agreement. *E.g.,* Ex. 2, § 1(a); Ex. 3, § 1(a). Therefore, the Plant Scherer Managing Board is bound by the terms of the Unit No. 4 Accounting Agreement.

42.     The Managing Agreement requires the Plant Scherer Managing Board to performs its obligations in a way that is consistent with the unit-specific agreements, which are referred to as "Participation Agreements." Ex. 1, App. A ("Guidelines for Budgets" requires costs are calculated "pursuant to the underlying Participation Agreements"); *see also,* Ex. 2, § 9(o); Ex. 3, § 10(v); Ex. 5, § 7(o); Ex. 6, § 8(s). Such obligations include, but are not limited to, cost allocation and budgeting for capital projects, operation, and maintenance of Plant Scherer. *E.g.,* Ex. 1, §§ 5.1, 8.1, 9.1.

43.     Each Participation Agreement requires the Plant Scherer Managing Board to act in accordance with Prudent Utility Practice. *See, e.g.,* Ex. 1, §§ 1.30, 5, 8-9, App. A; Ex. 2, §§ 2, 5, 6; Ex. 3, § 5; Ex. 5, §§ 2-5; Ex. 6, §§ 2-5. *See also* Ex. 1, § 7.1; Ex. 2, § 1(ba).Ex. 4, § I.A.2, § I.A.5, § I.B.6.

44.     The Accounting Agreement, to which all Defendants are bound, requires GPC, MEAG, OPC, and Dalton to use "a fair and equitable accounting policy or allocation method . . ." and to otherwise act in a fair, equitable, and consistent manner. Ex. 4, §§ I.A.2, I.A.3, I.A.5, I.B.6.

45.     Thus, when the Plant Scherer Managing Board is discharging its duties to review the budgets proposed by GPC, the Board is required to do so in accordance with Articles 5, 7, 11, and Appendix A of the Managing Agreement — that is, using Prudent Utility Practice and, separately, fairly and equitably allocating costs. The

Plant Scherer Managing Board's members, specifically GPC, MEAG, OPC, and Dalton, are required to do more than a simple "up or down" vote. The Plant Scherer Managing Board failed to do so with respect to the improper allocation of costs for the New Cells and Wastewater Facility, thereby breaching the Managing Agreement.

>### (iv) Managing Agreement and Participation Agreements Collectively Define "Common Facilities" and "Common Facility Cost of Construction"

46.    In violation of their contractual obligations, the Plant Scherer Managing Board (also referred to herein as the Co-owner Defendants) have, through their positions on the Plant Scherer Managing Board, wrongfully imposed upon Plaintiffs the obligation to pay what the Co-owner Defendants have incorrectly classified as "Common Facility Cost of Construction," which include engineering and design costs for the New Cells and the Wastewater Facility. Plaintiffs have paid these costs under protest in accordance with the relevant Participation Agreements. *See, e.g.,* Ex. 3, § 6(b)(vii).

47.    The governing agreements' definitions of "cost" are cabined by the agreements' definitions of "Common Facilities" and must be "properly and reasonably allocable . . . [as a] Common Facility Cost of Construction":

>a.    As defined by the Managing Agreement, "Common Facility Cost of Construction" has the meaning assigned in the Participation Agreements. Ex. 1, § 1.10.

b. "Common Facility Cost of Construction" is, in pertinent part, "all costs incurred . . . in connection with the planning, design, . . . addition, modification . . . of the Plant Scherer Common Facilities . . . which is properly and reasonably allocable to the Plant Scherer Common Facilities . . . " Ex. 2, 1(t).

c. As defined by the Managing Agreement "Cost of Construction" has the meaning assigned in the respective Participation Agreements. Ex. 1, § 1.14.

d. "Cost of Construction" is ". . . all properly and reasonably allocable . . . Common Facility Cost of Construction." Ex. 2, § 1(x).

48.    Per the Managing Agreement, "Plant Scherer Common Facilities" have the meaning assigned in the relevant provisions of the Participation Agreements. Ex. 1, § 1.26.

49.    The Unit No. 3 and Unit No. 4 Operating Agreements, which are incorporated by reference into the Managing Agreement, define the "Plant Scherer Common Facilities" to include equipment or property "***used*** in common by, or in connection with, one or both of Scherer Unit No. 1 and Scherer Unit No. 2 **and** one or both of Scherer Unit No. 3 and Scherer Unit No. 4 . . ." Ex. 2, § 1(bj) (emphasis added); *see also* Ex. 5, § 1(ao) (Unit Three Operating Agreement containing same definition of "Plant Scherer Common Facilities").

16

50.     Thus, Defendants' classification is incorrect and a breach of the governing agreements because, by definition, "Plant Scherer Common Facilities" requires that either Unit No. 3 or No. 4 to use the facility. Neither Unit No. 3 nor No. 4 would use the new facilities at issue, nor do they need to do so.

51.     Similarly, Plaintiffs are entitled to declaratory relief as to the future operating and maintenance costs for the New Cells and the Wastewater Facility, as well as the costs the Defendants are misclassifying as Common Facility Cost of Construction, which the Defendants are incorrectly classifying as "Plant Scherer Common Facilities."

52.     The Managing Agreement, and agreements incorporated therein, require GPC, as agent, and the Plant Scherer Managing Board to properly and fairly allocate operating costs among and between Units, Unit Common Facilities, Additional Units, Additional Unit Common Facilities, and Plant Scherer Common Facilities, as those terms are defined. Ex. 1 at Ex. C. GPC and the Plant Scherer Managing Board breached the Managing Agreement and Participation Agreements by wrongfully imposing these obligations on Plaintiffs.

## B.     GPC as Agent

53.     In addition to being a member of the Plant Scherer Managing Board, GPC also has fiduciary duties as an agent for FPL and JEA, which GPC has breached as to Plaintiffs.

54.     The Managing Agreement names GPC as the agent for all the other Scherer Owners with respect to all of Plant Scherer's facilities. *See, e.g.,* Ex. 1, §§ 1.5, 1.9 and 3. Additionally, GPC serves as the agent for each individual unit, including Unit Nos. 3 and 4. *See, e.g.*, Ex. 3, §§ 2(a) & (k); Ex. 4, § 5(a); Ex. 5, § 2; Ex. 6, § 4.

55.     Because GPC is FPL's and JEA's agent for Unit No. 4 and FPL's agent for Unit No. 3, FPL and JEA provide significant amounts of confidential information to GPC concerning, among other things, the operation of Unit Nos. 3 and 4. *See, e.g.*, Ex. 1, §§ 5.1, 8.1, 9.1, 13.12; Ex. 3, § 5; Ex. 6, § 4. GPC, as FPL's and JEA's agent, uses such confidential information to set budgets for capital projects and maintenance and operation obligations, and fulfill its other obligations as an agent.

56.     GPC's functions as agent for FPL and JEA with respect to Unit No. 4 include, but are not limited to, the management, control, operation, maintenance, addition, and modification of Unit No. 4. *E.g.* Ex. 2, §§ 1(g), 2(a); Ex. 3, §§ 1(j), 5(a)(i).

57.     GPC's functions as agent for FPL with respect to Unit No. 3 are similar in nature to its obligations for Unit No. 4. *See, e.g.,* Ex. 5, §§ 1(d), 2(a); Ex. 6, §§ 1(f), 4(a)(i).

58.     The Managing Agreement imposes upon GPC an obligation to operate and maintain Plant Scherer for the benefit of and on behalf of FPL and JEA,

including, but not limited to, managing funding from FPL and JEA and implementing various owner-approved budgets to operate Plant Scherer. *See* Ex. 1, §§ 1.4-1.5.

59.     This obligation is confirmed in each of the subsequent agreements that GPC has with FPL and JEA relating to Unit Nos. 3 and 4, which expressly require GPC to execute its role as the agent in a fair and equitable manner, in good faith, and in accordance with Prudent Utility Practice, as defined in the Managing Agreement, Unit No. 4 Operating Agreement, Unit No. 4 Ownership Agreement, Accounting Agreement, Unit No. 3 Operating Agreement, and Unit No. 3 Ownership Agreement. *See, e.g.,* Ex. 1, § 1.30; Ex. 1, §§ 5, 8-9, App. A; Ex. 2, §§ 2, 5, 6; Ex. 3, § 5; Ex. 4, § I.A.; Ex. 5, §§ 2-5; Ex. 6, §§ 2-5.

60.     GPC has failed to do so.

## C.     GPC Recognizes that Plant Scherer is No Longer Cost Effective, Yet Takes Inconsistent Positions on ELG Rule Compliance

61.     The agent for FPL, JEA and the other Scherer Owners, GPC, acknowledged that Plant Scherer is no longer cost-effective. GPC recognized that mounting cost pressures from compliance with current and future environmental regulations and competition from other, more economical replacements favor retiring the units.

62.     As a result, GPC described Unit Nos. 1 and 2 as economically "challenged," and GPC committed to retiring Unit No. 3 by 2028. As recently as

March 11, 2022, in testimony provided to the Georgia Public Service Commission, GPC stated:

a. "It is no longer economic to operate the Company's coal units long-term, given the increasing cost pressures from existing and future environmental requirements and the current availability of more economic replacement capacity." In Re: Georgia Power Company's 2022 Integrated Resource Plan, Docket No. 44160, Direct Testimony of Jeffrey R. Grubb, A. Wilson Mallard, Michael B. Robinson, and Jeffrey B. Weathers, Tr. 7:21-23.

b. "The Company's coal resources now lack sufficient economic and flexibility attributes to remain competitive within an electric system with large renewable penetration and in a future with continued environmental cost pressures, including carbon. [. . .] The Company's transition plan considers the [Environmental Protection Agency's ("EPA")] Effluent Limitations Guidelines . . . Reconsideration Rule cessation of coal combustion option, *which allows the Company to comply with the rule by permanently ceasing coal combustion at a unit* no later than December 31, 2028. This compliance option provides the Company with additional time to prepare the System for retirements by initiating transmission projects that are necessary to accommodate the

combined retirements and the procurement of replacement capacity, *while reducing or avoiding additional environmental-related investments for certain resources*." *Id.* at 18:15-19:6 (emphasis added).

    c.   "Coal units lack the necessary flexibility characteristics to efficiently respond to large changes in the generating output of renewable resources." *Id.* at 19:13-14.

    d.   GPC's "coal units [which include Unit Nos. 1, 2 and 3] are unable to start and stop daily, thereby creating economic inefficiencies in a future state with substantial intermittent resources." *Id.* at 19:17-19.

63.    GPC even admitted that retirement of Unit No. 3 is in the best interest of customers. "[E]conomic evaluations, combined with other operational considerations, led to the conclusion that retirement of Plant Scherer Unit 3 is in the *best interests of customers*." *Id.* at 21:21-23 (emphasis added). "The analysis for each unit shows that long-term continued operations is no longer in the best interest of customers." GPC 2022 Integrated Resource Plan, Docket No. 44160 at L-187.

64.    GPC's integrated resource plan ("IRP") filings with the Georgia Public Service Commission stated that Plant Scherer is in financial trouble:

    a.   "The economic analysis for the Company's coal resources does not support long-term continued operation." *Id.* at 11-73.

b. "Economic conditions continue to deteriorate for Plant Scherer. [. . .] The Company's 2022 IRP retirement studies reflect long-term economic risk associated with operation of Plant Scherer Units 1-3." *Id.* at 11-74. The Georgia Public Service Commission's proposed order and stipulation that adopts GPC's IRP even states: "Effluent Limitation Guidelines ("ELG") controls for . . . Plant Scherer Units 1 and 2 is approved as part of the Company's Environmental Compliance Strategy." Thus GPC itself has even certified to the Georgia Public Service Commission that the only units from Plant Scherer that will use the Wastewater Facility are Unit Nos. 1 and 2.

**D.    EPA Provides Coal Plants with Pathways for Environmental Compliance**

65.    Against the backdrop of financial deterioration, Plant Scherer became subject to new and/or changed environmental regulations pursuant to the ELG Rule. The Clean Water Act prohibits the discharge of pollutants from point sources to waters of the United States except as authorized by permit. 33 U.S.C. § 1311(a).

66.    GPC must comply with the ELG Rule because it discharges into surface waters.

67.    The ELG Rule addresses effluent limitations and standards for multiple waste streams generated by new and existing steam electric facilities, including flue gas desulphurization wastewater, as well as fly ash transport waters, bottom ash

transport waters, coal combustion residual leachate from landfills and surface impoundments, and wastewater from flue gas mercury control systems.

68.    The ELG Rule provides two alternative pathways for compliance: (i) to construct new facilities to handle waste streams from active units; or (ii) to retire the subject unit. Either option is an authorized pathway to comply with the ELG Rule; however, the first option is far less economical than the second option of retirement.

69.    Plaintiffs chose the second pathway — to retire Unit No. 4 at the end of 2021. Similarly, FPL and GPC (a Co-owner Defendant) selected retirement as the pathway for compliance for Unit No. 3, which will take place no later than 2028.

70.    The Co-owner Defendants chose the first pathway for Unit Nos. 1 and 2 — to construct the New Cells and the Wastewater Facility.

**E.    Cost Allocation for New Environmental Compliance Facilities**

71.    The Scherer Owners must act in accordance with Prudent Utility Practice and fairly allocate costs pursuant to express terms in the governing agreements.

72.    Both the Managing Agreement and the incorporated Participation Agreements, including, but not limited to, the Accounting Agreement, require GPC to act in accordance with Prudent Utility Practice. The Accounting Agreement specifically provides that "[i]f no accounting policy or allocation method or procedure has been specified herein for a particular cost or cost component, GPC, as

Agent, or the Scherer Unit No. 4 Participants shall propose a *fair and equitable* policy or allocation method to be used and submitted for approval by Scherer Unit No. 4 Participants and GPC, as Agent." Ex. 4, § I.A.3 (emphasis added). Thus, GPC must allocate costs for the New Cells and the Wastewater Facility in a fair and equitable manner. By allocating Common Facility Cost of Construction for the New Cells and Wastewater Facility to Plaintiffs, GPC has failed to do so, thereby breaching its fiduciary duty to FPL and JEA, as well as the Managing Agreement and the Participation Agreements for Unit Nos. 3 and 4.

73.     The Co-owner Defendants also have the obligation to allocate cost responsibilities in a fair, equitable, and consistent manner, consistent with their roles on the Plant Scherer Managing Board. *See, e.g.,* Ex. 1, § 7.1; Ex. 2, § 1(ba); Ex. 4, § I.A.2, § I.A.5, § I.B.6.

74.     By failing to abide by Prudent Utility Practice and the other requirements of the Managing Agreement and Participation Agreements in order to properly allocate Common Facility Cost of Construction for the New Cells and Wastewater Facility to Plaintiffs, the Co-owner Defendants have breached the Managing Agreement and the incorporated Participation Agreements for Unit Nos. 3 and 4, which include the Accounting Agreement.

    (i)    *After FPL and JEA elect to comply with ELG by retiring their units, the Co-Owner Defendants breach the agreements by collectively failing to exercise Prudent Utility Practice and refusing to allocate fairly and equitably Common Facility Cost of Construction, as required of them by the budgeting process in the Managing Agreement and Participation Agreements.*

75.    FPL and JEA gave GPC and the Plant Scherer Managing Board every opportunity to meet their contractual obligations.

76.    FPL engaged in a series of discussions with the other Scherer Owners regarding its retirement of Unit No. 4 and the impact of the changing ELG regulations, as well as the ELG Rule, on its obligations post Unit No. 4 retirement.

77.    As of April 2, 2019, the Plant Scherer 2019-2023 Common Capital Budget allocated money to address the ELG Rule. But by October 2019, the Plant Scherer Managing Board recognized that proposed ELG Rule changes were impending, leading GPC to propose a revised budget. FPL advised it would propose an alternative budget for the Plant Scherer Managing Board's review.

78.    On September 9, 2020, FPL formally gave GPC notice that it intended to retire its ownership interest in Unit No. 4 as of December 31, 2021. This retirement was an authorized pathway for compliance with the ELG Rule.

79.    On September 17, 2020, the Scherer Owners met for a Plant Scherer 2021 Common Facilities budget review meeting, in preparation for the September 23, 2020 Plant Scherer Managing Board meeting and budget approval vote. In anticipation of Unit No. 4's retirement, FPL attempted to discuss post Unit No. 4

retirement obligations. FPL and JEA explained their intent to achieve ELG compliance through retiring their units. FPL further explained that, as a result of the retirement, it would not be responsible for future ELG-related capital and operating and maintenance costs, such as the New Cells or Wastewater Facility.

80. GPC, as agent for the Scherer Owners, deferred discussion on the matter.

81. At the Plant Scherer Managing Board Meeting on September 23, 2020, FPL and JEA explained that because they intended to utilize the retirement of Unit No. 4 as their compliance option for the ELG requirements — as specifically permitted under the ELG Rule — they should not be obligated for investment costs related to the New Cells or Wastewater Facility, which would be incurred *years after* the retirement of Unit No. 4.

82. At the same meeting, GPC proposed a budget that allocated costs to FPL and JEA for the New Cells and Wastewater Facility. Such allocation was clearly inconsistent with Prudent Utility Practice and not fair or equitable.

83. FPL and JEA voted against the proposed budget that attributed the New Cells and Wastewater Facility costs to retiring units. FPL's predecessor in interest for Unit No. 3, Gulf Power Company, announced that it, too, would seek to retire Unit No. 3 as its compliance option with the ELG Rule.

84.     At the same meeting, despite the undisputed failing economics of Plant Scherer, MEAG, OPC, and Dalton took the position that even if a unit retires, that unit's owners would still be responsible for New Cells and Wastewater Facility costs.

85.     FPL submitted a revised alternate 2021 budget, reiterating that ELG compliance through retirement of Unit No. 4 was the only rational choice. FPL would not agree to bear the costs for investments incurred by the Co-owner Defendants' decision to continue operating Unit Nos. 1 and 2 related to ELG compliance that would not be installed until after Unit No. 4's retirement.

86.     Between October 2020 and April 2021, FPL made a series of requests to GPC, given GPC's role as the agent, asking GPC to provide specific data and information regarding GPC's position on Unit No. 4's post-retirement obligations and to meet with FPL.

87.     FPL requested monthly meetings with GPC to discuss Unit No. 4's post-retirement obligations, and on April 1, 2021, FPL requested GPC provide a 10-year ELG cost forecast. GPC intermittently responded to these requests but provided incomplete information.

**(ii)     *2022 Budget Approval for Plant Scherer***

88.     On or about August 2, 2021, FPL, acting as owner and as agent for JEA, requested an agenda item for the September 30, 2021 Plant Scherer Managing Board

meeting. The item recognized that upon retirement, FPL and JEA should have no obligations for future costs related to the New Cells and the Wastewater Facility because Unit No. 4 would not be producing anything covered by the ELG Rule.

89.     On or about August 16, 2021, GPC provided FPL with a copy of the proposed Unit No. 4 business plan for 2022-2026. While acknowledging that FPL and JEA would retire Unit No. 4 by December 31, 2021, the plan did not fairly or equitably allocate costs for the New Cells solely receiving materials from Unit Nos. 1 and 2, nor did it fairly and equitably allocate costs for the Wastewater Facility necessitated solely because of the Co-owner Defendants' decision to continue to operate Unit Nos. 1 and 2 after 2028.

90.     GPC's proposed Unit No. 4 business plan for 2022-2026 did not fairly allocate cost with reasonable judgment in light of the facts known at the time the decision was made, in breach of, among other things, Prudent Utility Practice.

91.     The proposed budget asked FPL and JEA to pay for, treat, and store pollutants generated because the Co-owner Defendants decided to continue the operation of Unit Nos. 1 and 2.

92.     GPC continued to delay in providing detailed budgeting information on Unit No. 4's post-retirement obligations.

93.     On or about September 20, 2021, FPL submitted an amended motion, reminding GPC of its obligations under the Accounting Agreement. FPL also requested GPC to forward its motion to the other Co-owner Defendants.

94.     JEA and FPL formally presented their motion to the Co-owner Defendants on or about September 30, 2021.

95.     In response, MEAG, OPC, and Dalton, along with GPC, voted against the motion.

96.     MEAG, OPC, Dalton, and GPC claimed that the Managing Agreement did not allow them to entertain a motion to reduce cost allocations due to unit retirements; but Prudent Utility Practice and the obligation to act fairly and equitably required MEAG, OPC, Dalton, and GPC to entertain such a motion.

97.     MEAG, OPC, Dalton, and GPC further claimed that the parties' contracts did not contemplate changes to allocation of what they called common facilities costs upon the retirement of a unit. But, GPC had adjusted certain cost allocations from GPC to Plant Scherer as a result of other unit retirements within its generation fleet outside of its ownership at Plant Scherer.

98.     FPL and JEA took several other actions at the September 30, 2021 meeting between the Scherer Owners. FPL and JEA stated that:

     a.  the retirement of Unit No. 4 served as their compliance option for the ELG Rule, such that they had no liability for the new Wastewater

Facility because of Unit Nos. 1 and 2 decision to continue operating after 2028; and

   b.   they were not responsible for costs related to the New Cells that would house by-products generated *solely* from Unit Nos. 1 and 2.

99.    At the September 30, 2021 meeting, FPL and JEA voted down the following budgets: (a) 2022 proposed common facility operation and maintenance budget along with the common facility capital budget; (b) 2022 proposed Unit Nos. 3 and 4 common operation and maintenance budget; (c) environmental capital budget; and (d) 2022 proposed Unit Nos. 3 and 4 common capital budget.

100.   FPL and JEA proposed to submit revised versions of these budgets they voted down on or before October 30, 2021.

101.   At the September 30, 2021 meeting, FPL reiterated that FPL and JEA did not believe it was appropriate, equitable or acting in good faith to charge them equally for costs that should be borne by MEAG, OPC, Dalton, and GPC, and that all costs billed to FPL and JEA should be fair and equitable.

102.   FPL and JEA recognized that there are some costs which are appropriate for them to share; however, there are other costs, such as for the New Cells and the Wastewater Facility, which FPL and JEA are not obligated to pay. This is because Unit Nos. 3 and 4 will never use them; therefore, they do not meet the definition of Plant Scherer Common Facilities.

103.   On or about October 15, 2021, GPC, on behalf of the Co-owner Defendants, sent a revised 2022-2026 Unit No. 4 business plan to FPL, but the Co-owner Defendants maintained their position that FPL and JEA would be responsible for costs for the New Cells and the Wastewater Facility for Unit Nos. 1 and 2, including Common Facility Cost of Construction and other costs. The Co-owner Defendants took these positions even though they are inconsistent with their obligations to act "reliably and cost-effectively" in accordance with Prudent Utility Practice, as well as in a fair, equitable, and consistent manner. *See, e.g.,* Ex. 1, § 1.30; Ex. 1, §§ 5, 8-9, App. A; Ex. 2, §§ 2, 5, 6; Ex. 3, § 5; Ex. 5, § 2-5; Ex. 6, §§ 2-5. *See also* Ex. 1, § 7.1; Ex. 2, § 1(ba); Ex. 4, § I.A.2, § I.A.5, § I.B.6.

104.   FPL responded to GPC's submission of a revised 2022-2026 business plan on or about October 26, 2021 by, among other things, continuing to object to any payment for the New Cells and the Wastewater Facility necessitated solely because of the decision to continue operating Unit Nos. 1 and 2.

105.   On October 26, 2021, FPL and JEA submitted an alternate Common Facilities operations and maintenance budget and an alternate Common Facilities capital budget in response to the budgets proposed by GPC at the September 30, 2021 Board meeting.

106.   On November 23, 2021, GPC notified FPL that its alternate proposed budget was rejected. GPC explained that this result was reached after discussions

with MEAG, OPC, Dalton, and GPC's response reflected their position on FPL's alternate proposed budget, as well. As a result, the Co-owner Defendants imposed the previously contested budgets — thereby allocating to FPL and JEA costs for the New Cells, as well as the Wastewater Facility, *solely necessitated as a result of the decision to continue to operate Unit Nos. 1 and 2*.

107.   MEAG, OPC, and Dalton independently pushed the rejection of FPL's alternate proposed budget and repeatedly endeavored to allocate costs of the New Cells and Wastewater Facility to FPL and JEA. The actions of MEAG, OPC, and Dalton in this regard were in breach of the Managing Agreement, Prudent Utility Practice, and the fair and equitable requirements stemming from and incorporated into the Managing Agreement. Had MEAG, OPC, and Dalton performed their obligations as members of the Plant Scherer Managing Board in accordance with the Managing Agreement, the Plant Scherer Managing Board would have overridden the inequitable budget presented by GPC.

108.   Implementation of the previously contested budget is not consistent with Section 5.1 of the Managing Agreement, as MEAG, OPC, and Dalton, along with GPC, failed to satisfy the prerequisite of such implementation because the proposed budget did not comply with Prudent Utility Practice, or fairly, equitably, and in good faith allocate costs as to Plaintiffs. Thus, the budget to be utilized cannot be the one submitted by GPC.

109.   On January 12, 2022, and again on February 7, 2022, FPL made its portion of payments to GPC, as the Plant Scherer agent, pursuant to the 2022 budgets previously objected to by FPL and JEA. FPL made such payments under protest and reserved its rights under the terms of the agreements and applicable law.

**F.     Summary of Current Dispute**

110.   Plaintiffs have already paid certain engineering and design costs to the Co-owner Defendants under protest. The Co-owner Defendants breached the governing agreements by requiring Plaintiffs to pay such costs.

111.   Even though these facilities will not be constructed for several years, the Co-owner Defendants are already incurring design and engineering costs, which they are wrongly passing onto to Plaintiffs as Common Facility Cost of Construction.

112.   The Co-owner Defendants are currently planning to construct two separate facilities, known as Cell 2 and Cell 3, as well as a future unnamed landfill, which are all designed to accept coal combustion and AQCS by-products exclusively from _Unit Nos. 1 and 2_.

113.   Construction of Cell 2 will occur from 2030-2033 and construction of Cell 3 will occur from 2025-2026. The Co-owner Defendants will also construct another unnamed landfill beginning in 2031 with a target completion date of 2034.

114.   FPL and JEA object to any allocation of cost to them from the New Cells that will solely be used by Unit Nos. 1 and 2.

115.   FPL and JEA further object to any allocation of cost to them for the construction of the Wastewater Facility to satisfy the obligations of MEAG, OPC, Dalton, and GPC with respect to the federal ELG Rule.

116.   FPL and JEA have satisfied or will satisfy their corresponding ELG obligations through the retirement of Unit No. 4. FPL and GPC will similarly satisfy their same obligations with respect to Unit No. 3 through retirement of Unit No. 3.

117.   Because neither Unit No. 3 nor Unit No. 4 will use or intends to use the New Cells or the Wastewater Facility, Defendants have improperly classified, and continue to improperly classifying, these costs as "Plant Scherer Common Facilities" in order to unjustly allocate costs to Plaintiffs, in contravention of the agreements.

118.   All conditions precedent to the filing and maintenance of this action have been satisfied, excused, or waived.

119.   Plaintiffs have retained the undersigned counsel to represent it in this action and is obligated to pay its counsel a reasonable fee for services rendered and expenses incurred on its behalf, for which Plaintiffs will seek reimbursement pursuant to the Participation Agreements for Unit Nos. 3 and 4.

## COUNT I — BREACH OF CONTRACT
### (*As to GPC*)

120.   FPL and JEA re-allege and incorporate by reference paragraphs 1 through 119 as if fully set forth herein.

121.   Pursuant to the Managing Agreement, GPC is the Common Facilities Agent for Plant Scherer. Ex. 1, § 1.5. GPC is also the agent for FPL under the Unit No. 3 Operating Agreement and the Unit No. 3 Ownership Agreement, as well as the agent for FPL and JEA under the Unit No. 4 Ownership Agreement and the Unit No. 4 Operating Agreement. Exs. 2, 3, 5 & 6.

122.   GPC is further bound to Plaintiffs under the Accounting Agreement, (Ex. 4), which is incorporated by reference into the Ownership Agreement and Operating Agreement for both Unit Nos. 3 and 4.

123.   GPC's duties under such agreements include exercising its obligations as the agent for FPL and JEA in accordance with Prudent Utility Practice, including, but not limited to properly allocating costs to Plaintiffs. *See,* Ex. 4, §§ I.A.2, I.A.3 (requiring GPC to allocate costs "fairly and equitably"); Ex. 1, App. A (requiring budgeting to occur pursuant to Participation Agreements and Prudent Utility Practice).

124. Furthermore, under the Ownership Agreement and Operating Agreements for Unit Nos. 3 and 4, GPC agreed it would not make any adverse

distinction between the Plaintiffs and its other interests in Plant Scherer, such as its interests in Unit Nos. 1 and 2. Ex. 2, § 6; Ex. 3, § 5; Ex. 5, § 5, Ex. 6 § 5.

125.   Costs for the New Cells and the Wastewater Facility are not Plant Scherer Common Facilities because they will be used solely by Unit Nos. 1 and 2.

126.   GPC materially breached the foregoing agreements by failing to follow Prudent Utility Practice, fairness, and equity when it:

> a.  proposed the Unit No. 4 business plan that ignored the fact that Unit No. 4 would never use the new facilities;
>
> b.  mis-defined certain costs for the New Cells and the Wastewater Facility as "Plant Scherer Common Facilities" when they are not;
>
> c.  proposed a revised budget that again mis-defined and mis-allocated Common Facility Cost of Construction;
>
> d.  voted to approve the revised budget; and
>
> e.  rejected Plaintiffs' revised budget and imposed the previously contested budgets.

127.   GPC breached its obligations to perform pursuant to Prudent Utility Practice by mis-allocating costs to Plaintiffs.

128.   GPC breached the Accounting Agreement by failing to fairly and equitably allocate costs to FPL and JEA with respect to the New Cells and Wastewater Facility.

129.   Furthermore, GPC undertook certain studies that examined pathways for compliance with the ELG Rule. Plaintiffs requested all such studies and other technical data used in connection with the studies. However, GPC failed to provide all of the studies to Plaintiffs even after repeated requests for such information, in breach of GPC's obligations to provide such information under the Managing Agreement and the Participation Agreements.

130.   Moreover, any attempt by GPC to have Unit No. 3 use the New Cells and/or the Wastewater Facility is a breach of contract because it is not necessary for it to use those new facilities to comply with the ELG Rule. Such an effort by GPC would be in contravention of, among other things, Prudent Utility Practice.

131.   Every contract under Georgia law implies a covenant of good faith and fair dealing in the contract's performance and enforcement. Included in this covenant is GPC's obligation not to take opportunistic advantage of FPL and JEA through GPC's agency functions at Plant Scherer. Notwithstanding these requirements, GPC continues to improperly allocate certain costs to FPL and JEA, in violation of the covenant of good faith and fair dealing.

132.   FPL and JEA have suffered damages to date in the amount of $1,329,633 and $377,652, respectively, due to GPC's material breaches of the Managing Agreement, Ownership Agreement and Operating Agreement for Unit

Nos. 3 and 4, as well as the Accounting Agreement, as described herein. Plaintiffs will continue to suffer damages.

### COUNT II — BREACH OF CONTRACT
*(As to GPC, MEAG, OPC, and Dalton)*

133.   FPL and JEA re-allege and incorporate by reference paragraphs 1 through 132 as if fully set forth herein.

134.   The Co-owner Defendants are all parties to the Managing Agreement with the Plaintiffs. Ex. 1.

135.   The Managing Agreement requires the Co-owner Defendants to exercise their obligations as members of the Plant Scherer Managing Board in accordance with Prudent Utility Practice. Ex. 1, § 5.1. This includes, but is not limited to, allocating costs to the Scherer Owners pursuant to the definition for Plant Scherer Common Facilities and Common Facility Cost of Construction.

136.   The Board is required to exercise its authority in reviewing and authorizing budgets in accordance with Prudent Utility Practice and must be consistent with "amounts GPC would expect to bill each Owner pursuant to the underlying Participation Agreements." Ex. 1, § 5.1 & App. A.

137.   The actions and authority of the Plant Scherer Managing Board shall be subject to the rights of FPL and JEA pursuant to the Unit No. 4 Operating Agreement, the Unit No. 4 Ownership Agreement, the Unit No. 3 Operating

Agreement, the Unit No. 3 Ownership Agreement, as well as the Accounting Agreement. *See, e.g.,* Ex. 2, § 9(o); Ex. 3, § 10(v); Ex. 5, § 7(o); Ex. 6, § 8(s).

138.   Each of the Co-owner Defendants breached the Managing Agreement when each of them:

a.   disregarded evidence that the imposition of Common Facility Cost of Construction and other costs related to the New Cells and Wastewater Facility was inconsistent with Prudent Utility Practice, unfair, and inequitable;

b.   took no steps to independently determine whether the allocation of Common Facility Cost of Construction and other costs related to the New Cells and Wastewater Facility to Plaintiffs was consistent with Prudent Utility Practice, fair, and equitable, as the Managing Agreement and incorporated agreements require;

c.   refused to modify the budgets originally imposed by GPC in its role as agent so as to bring them in accordance with Prudent Utility Practice and make them fair and equitable;

d.   refused to engage in any meaningful dialogue with Plaintiffs independent of GPC during the budgeting process, which, under these circumstances, is essential to exercising Prudent Utility Practice and a fair and equitable analysis (for example, FPL and JEA would have

confirmed that they will not reverse their decision to retire Unit Nos. 3 and 4);

    e.   instead implemented an unfair budget upon Plaintiffs by proposing a revised budget that again mis-defined and mis-allocated Common Facility Cost of Construction and other costs related to the New Cells and Wastewater Facility costs to Plaintiffs;

    f.   rejected Plaintiffs' revised budget and imposed the previously contested budgets, upon information and belief, claiming that each of them only had to do a mere "up or down vote" without any regard for Prudent Utility Practice, fairness, and equity; and

    g.   voted to approve the revised budget that improperly allocated costs to Plaintiffs for the New Cells and Wastewater Facility.

139.   By deeming certain costs for the New Cells and Wastewater Facility as Plant Scherer Common Facilities when they are not, the Co-owner Defendants violated Prudent Utility Practice, as well as the responsibility to ensure that the budgets for Unit No. 4 were allocated "fairly and equitably" under the Accounting Agreement, as incorporated into the Managing Agreement.

140.   Notwithstanding the fact that the Managing Agreement incorporates by reference the Participation Agreements, which includes the Accounting Agreement, the Co-owner Defendants are also bound to Plaintiffs through an implied covenant

of good faith and fair dealing in the Managing Agreement's performance and enforcement. This implied duty modifies the meaning of all explicit terms in the Managing Agreement to prevent a breach of those explicit terms.

141.   The Co-owner Defendants' obligations to act fairly and equitably therefore arise under explicit contract terms, and independently under Georgia law.

142.   Moreover, any attempt by the Plant Scherer Managing Board to force Unit No. 3 to use the New Cells and/or the Wastewater Facility is a breach of contract because it is not necessary for it to use those new facilities to comply with the ELG Rule. Such an effort by the Plant Scherer Managing Board would be in contravention of, among other things, Prudent Utility Practice.

143.   FPL and JEA have suffered damages in the amount of $1,329,633 and $377,652, respectively, due to the Co-owner Defendants material breaches of the Managing Board Agreement as described herein. Plaintiffs will continue to suffer damages.

## COUNT III — DECLARATORY JUDGMENT
*(As to GPC, OPC, MEAG and Dalton)*

144.   FPL and JEA re-allege and incorporate by reference paragraphs 1 through 143 as if fully set forth herein.

145.   FPL and JEA are entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), that they are not responsible for costs in any way related to the design, construction, operation, maintenance, or closure of:

a. the New Cells, that is, future landfills and cells to store by-products of the coal combustion process and corresponding AQCS for Unit Nos. 1 and 2; and

b. the Wastewater Facility, that is, any wastewater treatment systems to comply with the federal ELG Rule.

146.   FPL and JEA are interested parties because they have been and will continue to be forced to pay for the continued operation of Unit Nos. 1 and 2 through payment of these costs notwithstanding the fact that they do not, nor have they ever had any ownership interest in those units.

147.   Any decision on this count for declaratory judgment will necessarily affect the interests of OPC, MEAG, Dalton and GPC with respect to Unit Nos. 1 and 2 because a determination in favor of Plaintiffs will increase the Co-owner Defendant's portion of the costs for the New Cells and Wastewater Facility.

148.   An actual, ongoing controversy between FPL, JEA and the Co-owner Defendants exists, as the Co-owner Defendants are requiring FPL and JEA to pay for portions of the New Cells and the Wastewater Facility, in contravention of, among other things, the Managing Agreement. GPC's actions in this regard are also in contravention of the Accounting Agreement, Unit No. 4 Operating Agreement, Unit No. 4 Ownership Agreement, Unit No. 3 Operating Agreement and Unit No. 3 Ownership Agreement.

149.   It is unreasonable and inequitable to require FPL and JEA to continue to fund the New Cells and the Wastewater Facility, despite retirement of all their interest in Plant Scherer. Moreover, FPL and JEA should not have to pay for federal ELG Rule compliance caused by the decision to continue the operation of uneconomic units that they do not own or operate when the only rational way to comply is to retire the entirety of Plant Scherer, just as GPC announced it will do for Unit No. 3.

150.   Therefore, a declaratory judgment is necessary to relieve FPL and JEA of paying for the New Cells and Wastewater Facility and the risk of taking future action that, without direction, will continue to jeopardize their respective interests.

## COUNT IV – BREACH OF FIDUCIARY DUTY
*(As to GPC)*

151.   FPL and JEA re-allege and incorporate by reference paragraphs 1 through 119 as if fully set forth herein.

152.   FPL and JEA appointed GPC as their agent under the Unit No. 4 Operating Agreement and the Unit No. 4 Ownership Agreement. Ex. 2, § 2(a) & (k); Ex. 3, § 5(a) & (b).

153.   FPL appointed GPC as its agent under the Unit No. 3 Operating Agreement and the Unit No. 3 Ownership Agreement. Ex. 5, § 2(a) & (k); Ex. 3, § 5(a) & (b).

154.    The Scherer Owners appointed GPC as the Common Facilities Agent under the Managing Agreement. Ex. 1, §§ 1.9, 3.

155.    GPC is situated to exercise a controlling influence over the will, conduct, and interests of FPL and JEA given its broad authority as their agent for Plant Scherer.

156.    Moreover, the relation of principal and agent arises here because FPL and JEA expressly authorized GPC to act on their behalf. In its role as agent, GPC has authority to conduct studies, enter into agreements, and take other actions to, among other things, operate and maintain Unit Nos. 3 and 4, as well as the Plant Scherer Common Facilities.

157.    Certain duties devolve upon GPC, as the agent for FPL and JEA, merely by virtue of it being an agent. As the agent for FPL and JEA, GPC is a fiduciary with respect to the matters within the scope of its agency.

158.    The relationship of principal and agent is confidential and fiduciary in character and demands the utmost in loyalty and good faith from GPC towards FPL and JEA. GPC, as Plaintiffs' agent, is obligated to exercise, for and on behalf of FPL and JEA, skill, loyalty, and absolute good faith.

159.    GPC may not make a profit for itself out of the relationship, or out of the knowledge obtained from the relationship, to the injury of FPL and JEA; is

required to act primarily for the benefit of FPL and JEA in matters connected with the agency; and must deal fairly with FPL and JEA at all times.

160.   GPC, in concert with the other Co-owner Defendants, decided to continue operation of Unit Nos. 1 and 2, which GPC partially owns. This decision is inconsistent with GPC's expressed positions that operation of Plant Scherer is economically inefficient and not in the best interest of its customers.

161.   Instead of closing Unit Nos. 1 and 2, GPC, in concert with the other Co-owner Defendants, developed and executed a plan to wrongfully impose Plant Scherer Common Facilities costs on FPL and JEA, to subsidize their continued operation of the economically inefficient Unit Nos 1 and 2. GPC's and the other Co-owner Defendants' wrongful imposition of such costs on FPL and JEA is designed to do nothing more than to improperly offset the cost of the New Cells and the Wastewater Facility, the construction of which is necessitated solely by GPC's and the other Co-owner Defendants' decision to continue operation of Unit Nos. 1 and 2.

162.   GPC acted in its own self-interest to the detriment of FPL and JEA, in direct violation of its fiduciary duties to FPL and JEA.

163.   GPC made adverse distinctions in its role as agent for FPL and JEA with respect to Unit Nos. 3 and 4, as well as the Plant Scherer Common Facilities, when it acted with MEAG, OPC, and Dalton to allocate costs for the New Cells and

Wastewater Facility to FPL and JEA in an effort to subsidize its own, along with MEAG's, OPC's, and Dalton's, continued operation of Unit Nos. 1 and 2.

164.   Furthermore, GPC undertook certain studies that examined pathways for compliance with the ELG Rule. Plaintiffs requested all such studies and other technical data used in connection with the studies. However, GPC failed to provide all of the studies to Plaintiffs even after repeated requests for such information, in breach of GPC's fiduciary duty to Plaintiffs.

165.   GPC failed to maintain the utmost loyalty and good faith in its role as agent for FPL and JEA through its efforts to subsidize the continued operation of Unit Nos. 1 and 2. GPC further failed to exercise, for and on behalf of FPL and JEA, the requisite amount of skill, loyalty and absolute good faith in its role as agent for Unit Nos. 3 and 4, as well as the Plant Scherer Common Facilities.

166.   GPC made a profit for itself from the relationship and/or from the knowledge obtained from the relationship, to the injury of FPL and JEA, as it has subsidized, and is continuing to subsidize, the continued operation of Unit Nos. 1 and 2 (which GPC co-owns) through misclassifying the New Cells and the Wastewater Facility, as Plant Scherer Common Facilities.

167.   GPC has failed to act primarily for the benefit of FPL and JEA in matters connected with the agency it has as the agent for FPL and JEA; it has engaged in self-dealing by subsidizing its continued operation of Unit Nos. 1 and 2.

168.   OPC's, MEAG's, and Dalton's influence in GPC's improper allocation of costs to FPL and JEA for the New Cells and Wastewater Facility does not protect GPC from liability because GPC's actions were inconsistent with the Managing Agreement and the Participation Agreements for Unit Nos. 3 and 4.

169.   As the agent for FPL and JEA, GPC must disregard instructions from OPC, MEAG, and Dalton that are in breach of the Managing Agreement and any other terms and conditions incorporated into the Managing Agreement by reference.

170.   GPC failed to disregard the improper instructions with respect to cost allocation on the New Cells and Wastewater Facility, and breached its fiduciary duty to Plaintiffs.

171.   On information and belief, GPC is also inappropriately imposing other costs to Plaintiffs, outside of the New Cells and Wastewater Facility that are not allocable to FPL and JEA. Such conduct is in breach of its fiduciary duty to FPL and JEA with respect to, among other things, GPC's obligations for Unit Nos. 3 and 4.

172.   FPL and JEA have suffered damages in amounts to be proven at trial due to GPC's breach of its fiduciary duty to them as their agent for Unit No. 4, the Plant Scherer Common Facilities, as well as FPL's agent for Unit No. 3. Plaintiffs will continue to suffer damages.

## **DEMAND FOR A JURY**

Plaintiffs hereby demand a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for:

1.      An award of compensatory damages to FPL in an amount greater than $1,329,633, as well as any other costs FPL continues to pay the Co-owner Defendants for the New Cells and Wastewater Facility together with pre- and post-judgment interest;

2.      An award of compensatory damages to JEA in an amount greater than $377,652, as well as any other costs JEA continues to pay the Co-owner Defendants for the New Cells and Wastewater Facility together with pre- and post-judgment interest;

3.      A final declaration and decree that FPL and JEA are not responsible for any costs for the New Cells, as well as the Wastewater Facility;

4.      An award of compensatory damages to FPL and JEA in an amount to be determined at trial, for GPC's breach of fiduciary duty, together with pre- and post-judgment interest;

5.      A reimbursement of attorneys' fees and costs, in an amount to be proven after trial, as provided for in the Participation Agreements for Unit Nos. 3 and 4 and otherwise; and

6.      Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

DATED: March 13, 2023            **AKERMAN LLP**

*/s/ Montoya M. Ho-Sang*
Montoya M. Ho-Sang
Georgia Bar No. 572105
999 Peachtree Street, N.E., Suite 1700
Atlanta, GA 30309
Telephone: (404) 733-9800
Facsimile: (404) 733-9898
Email: montoya.ho-sang@akerman.com

Michael C. Marsh (*Pro Hac Vice*)
Sowmya Bharathi (*Pro Hac Vice*)
201 E. Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 462-2224
Email: michael.marsh@akerman.com
Email: sowmya.bharathi@akerman.com

John M. Neary (*Pro Hac Vice*)
750 Ninth Street, N.W., Suite 750
Washington, DC 20001
Telephone: (202) 393-6222
Facsimile: (202) 393-5959
Email: john.neary@akerman.com

*Counsel for Plaintiffs Florida Power & Light
Company and JEA*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 13, 2022, I filed a true and correct copy of the foregoing document with the Clerk of the Court via CM/ECF, which will send e-mail notification of such filing to all counsel of record.

By: */s/ Montoya M. Ho-Sang*
   Montoya M. Ho-Sang
   AKERMAN LLP
   999 Peachtree Street, N.E., Suite 1700
   Atlanta, GA 30309
   Telephone: (404) 733-9800
   Facsimile: (404) 733-9898
   Email:montoya.ho-sang@akerman.com